1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11  PHILADELPHIA INDEMNITY                      No. 2:24-cv-00797-DJC-SCR
    INSURANCE COMPANY,
12

13                   Plaintiff,

14  v.                                          ORDER

15  SWAN ENGINEERING, et al.,

16                   Defendants.

17

18          This case is about the duties owed under an indemnity agreement.  Plaintiff

19  Philadelphia Insurance Company filed suit alleging Defendants Swan Engineering,

20  Liberty Pipeline Solutions, Brooke Swanson, and Justin Robert Swanson breached

21  their duty to indemnify Philadelphia after Philadelphia settled two lawsuits on their

22  behalf.  Plaintiff now moves for summary judgment, or, in the alternative, summary

23  adjudication on its claims against Defendants.  (MSJ (ECF No. 30)).  For the reasons

24  explained below, the Court grants the Motion in part and denies it in part.

25  ////

26  ////

27  ////

28  ////

**PROCEDURAL HISTORY**

On March 15, 2024, Plaintiff filed a Complaint alleging that Defendants Swan Engineering, Liberty Pipeline Solutions, Brooke Swanson, and Justin Robert Swanson (collectively "Defendants") breached their duty to indemnify Plaintiff in accordance with the terms of an indemnity agreement after Plaintiff settled claims involving certain bonded projects on their behalf.  (Compl. (ECF No. 1).)  In the Complaint, Plaintiff asserted three claims for relief: one, express indemnity/breach of contract; two, statutory reimbursement pursuant to California Civil Code section 2847; and three, declaratory relief.  (*Id.*)  On August 26, 2025, Plaintiff moved for summary judgment, or, in the alternative, summary adjudication on all three claims.  (*See generally* MSJ.)  The motion is fully briefed.  (Opp'n (ECF No. 31); Reply (ECF No. 32).)

In the moving papers, Plaintiff provides a memorandum of points and authorities (*see generally* MSJ), a separate statement of undisputed facts ("PSUF" (ECF No. 30-1)), a compendium of evidence (Exs. 1–15 (ECF No. 30-4)), the declaration of Shashauna Szczechowicz (Decl. of Szczechowicz (ECF No. 30-3)), and the declaration of Vincent Romeo (Decl. of Romeo (ECF No. 30-2)).  With their opposition brief, Defendants provide a response to Plaintiff's separate statement ("DSUF" (ECF No. 31-1)), and the declaration of Justin Swanson (Decl. of Swanson (ECF No. 31-2)) with a supporting exhibit.  Plaintiff filed a timely reply.  On October 15, 2025, Plaintiff filed objections to Defendants' opposition to the motion for summary judgment.  (Pl.'s Objs. (ECF No. 34).)[1]

---

[1] Per the undersigned's standing order for civil cases, "the moving party may not file a reply to the nonmoving party's response to the Statement of Undisputed Facts."  (DJC's Standing Order in Civil Cases at 3.)  Here, Plaintiff has filed a document presenting evidentiary objections to Defendants' Response to Plaintiff's Separate Statement of Uncontroverted Facts, but the Court will not consider this additional filing in ruling on the Motion.

1    Because the Court finds this matter suitable for resolution on the papers

2    pursuant to its authority under Local Rule 230(g), the October 16, 2025, hearing on

3    the motion was vacated.  (ECF No. 33.)

4                                    **LEGAL STANDARD**

5    Summary judgment is appropriate where "there is no genuine dispute as to

6    any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

7    Civ. P. 56(a).  A dispute is "genuine" if "a reasonable jury could return a verdict for the

8    nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A fact is

9    "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

10    The moving party bears the initial burden of informing the court of the basis

11    for the motion and identifying the portion of the record "which it believes

12    demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v.*

13    *Catrett,* 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party to

14    "establish that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus.*

15    *Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585 (1986).  The parties must "(A) cit[e] to

16    particular parts of materials in the record . . . or (B) show[ ] that the materials cited do

17    not establish the absence or presence of a genuine dispute, or that an adverse party

18    cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

19    When determining a motion for summary judgment, "the inferences to be drawn

20    from the underlying facts must be viewed in the light most favorable to the party

21    opposing the motion."  *Matsushita Elec. Indus. Co.,* 475 U.S. at 587 (cleaned up and

22    citation omitted).  Ultimately, for the moving party to succeed, the Court must

23    conclude that no rational trier of fact could find for the opposing party.  *See id.*

24    A court may consider evidence as long as it is "admissible at trial."  *Fraser v.*

25    *Goodale,* 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on

26    the evidence's form, but its content.  *Block v. City of L.A.,* 253 F.3d 410, 418–19 (9th

27    Cir. 2001) (citation omitted).  The party seeking admission of evidence "bears the

28    burden of proof of admissibility."  *Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1004

3

1    (9th Cir. 2002).  If the opposing party objects to the proposed evidence, the party

2    seeking admission must direct the court to "authenticating documents, deposition

3    testimony bearing on attribution, hearsay exceptions and exemptions, or other

4    evidentiary principles under which the evidence in question could be deemed

5    admissible . . . ."  *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 385–86 (9th Cir. 2010).

6    But if evidence falls short of the formalities of Rule 56, a district court still may

7    exercise its discretion "to be somewhat lenient."  *Sch. Dist. No. 1J, Multnomah Cnty.,*

8    *Or. v. ACandS, Inc.,* 5 F.3d 1255, 1261 (9th Cir. 1993) (collecting cases).

9                                      **DISCUSSION**

10   **I.   Undisputed Facts[2]**

11        Plaintiff is a California corporation authorized to engage in the surety business.

12   (DSUF ¶ 2.)  On April 10, 2019, Defendants executed a general indemnity agreement

13   ("GIA") in favor of Plaintiff.  (*Id.* ¶ 3.)

14        **A.   The GIA Agreement**

15        The GIA requires Defendants to indemnify Plaintiff against certain defined

16   losses.  (Pl.'s Ex. 1 (ECF No. 30-4) at 2.)[3]  The indemnity provision provides that:

17             Indemnitors agree to indemnify and hold harmless Surety
18             from and against any Loss sustained or incurred: (a) by
               reason of having executed or being requested to execute
               any and all Bonds; (b) by failure of Indemnitors or Principals
19             to perform or comply with any of the covenants or
               conditions of this Agreement or any other agreement; and
20             (c) in enforcing any of the covenants or conditions of this
               Agreement or any other agreement.  The Indemnitors'
21             obligation to indemnify the Surety shall also apply to any
               Bond renewals, continuations or substitutes therefore.  In
22             the event of payments by Surety, Indemnitors agree to
               accept vouchers, a sworn itemization, or other evidence of
23             such payments as prima facie evidence of the fact and
               extent of the liability of Indemnitors to Surety in any
24             demand, claim or suit by Surety against Indemnitors.

25   _____

26   [2]  Defendants raise evidentiary and some factual objections to certain facts presented by Plaintiff.
     Except where noted, the facts recounted below are considered undisputed for purposes of the
     summary judgment motion.  Fed. R. Civ. P. 56(e)(2).

27   [3]  Because Plaintiff's exhibits are all part of the same filed document, the Court will cite to the Bates
28   numbers for each exhibit rather than the numbering provided by ECF.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> Separate suits may be brought under this Agreement as causes of action accrue, and the pendency or termination of any such suit shall not bar any subsequent action by Surety. The Surety may, but shall not be obligated to, join any or all of the Indemnitors or Principals as parties to any action relating to any Bonds or this Agreement, and Surety shall have no obligation to exhaust any remedies against any person or entity prior to pursuing any such action against one or more Indemnitors or Principals.    All Principals and Indemnitors waive and subordinate all rights of indemnity, subrogation, and contribution against each other until all obligations due to the Surety under this Agreement, at law, or at equity have been fully satisfied. The Surety shall be entitled to intervene in any action between one or more Principals or Indemnitors in order to enforce this provision.

(Pl.'s Ex. 1 at 2.)  The GIA also defines "Loss" as follows:

> Any and all liability, losses, costs, expenses, and fees of whatever kind or nature that Surety may sustain or incur as a result of executing any Bond, or as a result of the failure of Principal or Indemnitors to perform or comply with this Agreement. Loss includes but is not limited to: (i) sums posted by Surety as a reserve for the payment of potential losses and/or expenses; (ii) all costs and expenses incurred in connection with investigating, paying or litigating any claim, and/or enforcing this Agreement, including but not limited to legal fees and expenses, professional and consulting fees, technical and expert witness fees and expenses; (iii) all accrued and unpaid premiums owing to Surety for the issuance, continuation or renewal of any Bonds or for any policy of insurance issued by Surety for the Principal or Indemnitors; (iv) funds loaned or advanced by Surety to the Principal; and (v) all other amounts payable to Surety according to the terms and conditions of this Agreement or any other agreement between Surety and Principal or Indemnitors.

(*Id.*)  The GIA also requires Defendants to post collateral upon Plaintiff's demand in certain circumstances:

> Indemnitors agree to deposit immediately upon demand by Surety an amount equal to the greater of: (a) the amount of any reserve established by Surety in its sole discretion to cover any actual or potential liability for any Loss or potential Loss for which Indemnitors would be obliged to indemnify Surety hereunder; or (b) the amount of any Loss or potential Loss (including legal, professional, consulting, and expert fees and expenses) in relation to any claim or claims or other liabilities asserted against Surety as a result of issuing any Bond, as determined by the Surety in its sole discretion.  Surety may, in its sole discretion, either retain or use any part or all of the collateral in settlement or

5

payment of any claim made under any Bond, as reimbursement for any actual Loss already incurred, as reserve to cover the amount of any potential Loss, or for any other purpose related to any Loss, liability, or expense for which the Indemnitors would be required to reimburse Surety under the terms of this Agreement. The Principals and Indemnitors shall be obligated to deposit the amount of collateral demanded by Surety regardless of whether they dispute their liability for any Loss or potential Loss or assert any defenses to the validity or enforcement of this Agreement. In the event that Surety demands collateral from more than one Principals or Indemnitors, Surety shall be entitled, in its sole discretion, to apportion the amount of collateral required to be deposited by each Principal or Indemnitor. If Surety permits the Indemnitors to deposit less than the full amount of either (a) or (b) herein, Surety may, from time to time, require the Indemnitors to increase the amount of the collateral by any amount Surety deems appropriate, in its sole discretion, up to an amount equal to the greater of (a) or (b) herein. In the event that the Indemnitors fail to deposit the amount of cash collateral required under this provision, Surety may, in its sole discretion, direct the Indemnitors to deposit alternate forms of collateral security acceptable to Surety. Surety agrees to refund any unused portion of the deposit, without any interest or other damages for loss of use of such funds, upon the termination of all liability of Surety on all Bonds and the full performance of all of the Principals and Indemnitors of all obligations under this Agreement.

(Pl.'s Ex. 1 at 3.)

**B. The Bonds**

On April 12, 2019, Performance Bond No. CE11510701367 ("Tuscan Bond") in the amount of $494,193.00 was issued on behalf of principal Swan for the installation of storage ponds at Tuscan Ridge Base Camp in Paradise, California. (DSUF ¶ 9.) On June 28, 2018, Public Works Faithful Performance Bond No. CE11510711332 ("Shadowbrook Bond") in the amount of $291,078.00 was issued on behalf of principal Swan in connection with the Shadowbrook Lift Station and Forcemain Phase 2 project. (DSUF ¶ 10.)

**C. The Underlying Lawsuits Against the Bonded Projects**

On March 5, 2020, certain individuals filed a complaint ("Hart Case") against Swan and other defendants alleging wage claims in Placer County Superior Court. (DSUF ¶ 11.) On March 25, 2020, different individuals filed a complaint ("Hinojosa

6

1  Case") against Swan and other defendants alleging wage claims in Placer County

2  Superior Court.  (DSUF ¶ 12.)  Both cases were subsequently consolidated into one

3  action.  (DSUF ¶ 13.)  Philadelphia Indemnity Insurance Company was named as Doe

4  Defendant No. 152 to the consolidated action.  (DSUF ¶ 14.)  Both cases arise out of

5  claims for unpaid wages in connection with the Tuscan and Shadowbrook bonded

6  projects.  (DSUF ¶ 15.)  On October 18, 2023, Plaintiff paid $240,000.00 to settle the

7  consolidated action.  (DSUF ¶ 16.)  $110,000.00 was paid from the Shadowbrook

8  Bond to pay the claims involving the Shadowbrook project and $130,000.00 was paid

9  from the Tuscan Bond to pay the claims involving the Tuscan project.  (*Id.*)  Plaintiff

10  issued certain checks to settle the consolidated action.  (DSUF ¶ 17.)  Check

11  No. 3000955126 in the amount of $130,000.00 was drawn against the Tuscan Bond,

12  and check No. 3000955127 in the amount of $110,000.00 was drawn against the

13  Shadowbrook Bond.  (DSUF ¶ 17.)  Both checks are dated November 13, 2023.  (*Id.*)

14  **D.  The I-5 Rentals Claim Against the Tuscan Bond**

15       On September 23, 2019, Plaintiff asserts it received a claim on the Tuscan

16  Bond in the amount of $354,523.31 by I-5 Rentals and that it investigated I-5's claim.

17  (PSUF ¶ 18.)  Plaintiff paid the I-5 claim by check on December 23, 2019.[4]  (*Id.*; Ex. 4

18  at 30.)

19  **E.  Philadelphia's Requests for Indemnification**

20       On August 1, 2022, Philadelphia demanded that Defendants indemnify

21  Philadelphia for the $354,523.31 paid to I-5 Rentals and provide collateral to

22  Philadelphia as required by the Indemnity Agreement.  (DSUF ¶ 19.)  Defendants did

23  not indemnify Philadelphia for its losses or provide collateral.[5]  (PSUF ¶ 20.)

---

24  [4] While Plaintiff does not provide any evidence reflecting the original claim demand from I-5 Rentals,
25  Defendants do not provide any evidence to dispute the fact of the claim.  To the extent Defendants
   provide evidentiary objections that Philadelphia's check to I-5 is hearsay, it is not.  The payment of a
26  check is not hearsay if offered as evidence of legally operative verbal conduct—it is a verbal act.  *United
   States v. Pang*, 362 F.3d 1187, 1193 (9th Cir. 2004).

27  [5] Although Defendants assert that Plaintiff overpaid to settle the underlying wage claims, they do not
28  dispute that they did not indemnify Plaintiff or provide collateral.

7

1   On December 28, 2023, Plaintiff made a second demand for indemnity for the

2   I-5 payment and settlement payment for the consolidated action.  (DSUF ¶ 21.)

3   Plaintiff additionally requested payment of attorneys' fees and costs incurred in

4   defending the consolidated action.  (*Id.*)

5   Plaintiff asserts it has incurred a loss of not less than $873,556.31.  (PSUF ¶ 22.)

6   This figure includes $594,523.31 in principal damages; $244,221.05 in prejudgment

7   interest pursuant to the terms of the GIA; and certain attorneys' fees and costs.  (PSUF

8   ¶¶ 22–25.)

9   ## II. Evidentiary Objections

10  Defendants raise various evidentiary objections to particular facts in Plaintiff's

11  separate statement.  (*See* DSUF ¶¶ 4–8, 18, 20–25.)  Under the summary judgment

12  standard, "[a] party may object that the material cited to support or dispute a fact

13  cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P.

14  56(c)(2).  Defendants have not shown these facts cannot be introduced in an

15  admissible form at trial.  *See McCarthy v. R.J. Reynolds Tobacco Co.*, No. 2:09-cv-

16  02495-WBS-DAD, 2011 WL 13405571, at *1 (E.D. Cal. Mar. 31, 2011) (explaining that

17  federal rule 56 "implicitly limits objections to those that could not be cured at trial")

18  (citation omitted).  Accordingly, Defendants' evidentiary objections are overruled.  To

19  the extent Defendants provide a factual reason for the objections, such as Plaintiff

20  overpaid to settle the underlying litigation or overpaid its attorneys (*see* DSUF ¶¶ 20,

21  25), they do not support these assertions with evidence sufficient to create a genuine

22  dispute of material fact.

23  ## III. Analysis

24  ### A. Motion for Summary Judgment

25  Plaintiff brings three causes of action: one, express indemnity/breach of

26  contract; two, statutory reimbursement under California Civil Code section 2847; and

27  three, a request for declaratory relief.  The Court addresses each in turn.

28

8

1    **1. Breach of Contract**

2        California law has long recognized the right of a surety, such as Plaintiff, to

3    indemnification under the terms of a written indemnity agreement.  *See, e.g.*, *Fid. &*

4    *Deposit Co. of Md. v. Whitson*, 187 Cal. App. 2d 751, 756 (1960).  "An indemnity

5    agreement is to be interpreted according to the language and contents of the

6    contract as well as the intention of the parties as indicated by the contract."  *Myers*

7    *Bldg. Indus., Ltd. v. Interface Tech., Inc.*, 13 Cal. App. 4th 949, 968 (1993) (citation

8    omitted).  To establish a valid claim for breach of an indemnity agreement under

9    California law, Philadelphia must demonstrate the existence of an indemnity

10   agreement, Philadelphia's performance under the agreement, breach of the

11   agreement, and damages.  *See Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830

12   (1968).

13       It is undisputed the parties executed an indemnity agreement.  (DSUF ¶¶ 1–3.)

14   It is also undisputed that Philadelphia incurred losses under the agreement by paying

15   the claims arising out of the bonds.  (DSUF ¶ 17.)  In relevant part, the GIA provides

16   that losses include "[a]ny and all liability, losses, costs, expenses, and fees of whatever

17   kind or nature that [Plaintiff] may sustain or incur as a result of executing any Bond, or

18   as a result of the failure of Principal or Indemnitors to perform or comply with this

19   Agreement."  (Pl.'s Ex. 1 at 2.)  Additionally, "[l]oss includes but is not limited to . . . all

20   costs and expenses incurred in connection with investigating, paying or litigating any

21   claim, and/or enforcing this Agreement . . . ."  (*Id.*)  Here, because Plaintiff's

22   settlement payments were incurred in connection with litigation regarding the

23   Shadowbrook and Tuscan bonded projects, they constitute a loss.  In addition, the I-5

24   Rentals claim relates to the Tuscan bonded project, which Plaintiff also paid and

25   which constitutes another loss.

26       The GIA provides that, once a surety like Plaintiff makes such a payment,

27   Defendants "agree to accept vouchers, a sworn itemization, or other evidence of such

28   payments as prima facie evidence of the fact and extent of the liability" of Defendants

1  in any "demand, claim, or suit" by Plaintiff. (*Id.*) It is undisputed that Plaintiff provided

2  Defendants with demand letters detailing their financial exposure and settlement

3  payments. (*See* Pl.'s Exs. 7–8.) Moreover, Plaintiff has provided the sworn declaration

4  of an employee, Shashauna Szczechowicz, along with copies of the payments made

5  on Plaintiff's behalf in connection with the bonded projects and indemnity litigation.

6  (Pl.'s Exs. 4, 6.) Plaintiff has also provided billing records for its attorneys' fees and

7  costs related to the bonded projects. (Pl.'s Exs. 13–15.) Accordingly, Plaintiff has

8  provided sufficient evidence of the losses it sustained under the GIA.

9      "Once the moving party shows that the indemnity agreement contains such a

10  prima facie evidence clause, the burden shifts to the non-moving side to show that

11  the amount claimed is incorrect or that Philadelphia acted in bad faith in making such

12  payments." *Travelers Cas. & Sur. Co. of Am. v. Coyle/Reno Joint Venture*, No. 3:17-cv-

13  03141-JSC, 2018 WL 3344661, at *5 (N.D. Cal. Jul. 9, 2018) (citation omitted)

14  ("*Coyle*"). Defendants have failed to provide any evidence showing that Philadelphia

15  acted in bad faith or that the amounts claimed are incorrect. While Defendants

16  provide the declaration by defendant Justin Swanson asserting that the settlement

17  amounts for the underlying litigation were "grossly excessive," in reference to an

18  expert's report in the state court litigation indicating Defendants had minimal

19  damages exposure, this is not evidence of Plaintiff's bad faith but rather a

20  disagreement between Defendants and Plaintiff about the value of settlement.[6] (*See*

21  *generally* Swanson Decl.) The GIA does not condition the duty to indemnify or post

22  collateral on Defendants' agreement with Plaintiff's decisions. Indeed, the GIA

23  specifies that Defendants "shall be obligated to deposit the amount of collateral

24  demanded by [Plaintiff] regardless of whether they dispute their liability for any Loss

25  _____

26  [6] In *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 n.5 (9th Cir. 2006), the Ninth Circuit held that it was not an abuse of discretion for the district court to exclude the testimony of an undisclosed

27  expert. Here, Defendants did not disclose this expert report by the scheduling deadline, instead informing the Court that they "decided to not retain or disclose any experts at this time." (ECF No. 29.)

28  Accordingly, Defendants' expert report is excluded.

1   or potential Loss or assert any defenses to the validity or enforcement of this

2   Agreement." (Pl.'s Ex. 1 at 3.)  *See Coyle*, 2018 WL 3344661, at *5 (rejecting

3   argument that principal's mere disagreement with surety's settlement decisions

4   constitutes bad faith or objective unreasonableness).

5          Moreover, Defendants' contention that the expert's report was ignored and

6   that the settlement was reached without their knowledge or participation is not

7   supported by any evidence.  The record reflects that Swan Engineering was named in

8   the underlying litigation as early as March 2020 and remained a defendant after the

9   matters were consolidated. (Pl.'s Ex. 9 at 92; Pl.'s Ex. 10 at 122.)  The settlement

10  agreement entered into by Plaintiff also expressly provides that Plaintiff "reserves all

11  rights, whether arising contractually, statutorily, or in equity against SWAN and any

12  and all personal indemnitors." (Pl.'s Ex. 5 at 34.)

13         Accordingly, because Defendants have not carried their burden to rebut

14  Plaintiff's prima facie showing of liability and there is no genuine dispute of material

15  fact, summary judgment on the breach of contract claim is granted.

16         **2.  Statutory Reimbursement under Cal. Civ. Code § 2847**

17         Plaintiff seeks summary judgment as to the second cause of action, for

18  reimbursement pursuant to Cal. Civ. Code § 2847.  That statute provides:

19             If a surety satisfies the principal obligation, or any part
                thereof, whether with or without legal proceedings, the
20             principal is bound to reimburse what he has disbursed,
                including necessary costs and expenses . . .
21

22  *Id*.  "A surety . . . is one who promises to answer for the debt, default, or miscarriage

23  of another." Cal. Civ. Code § 2787.  When the parties signed the GIA, Plaintiff

24  became the surety for Defendants.  The GIA provides Plaintiff with the authority to

25  settle "any claim or claims or other liabilities asserted against [Plaintiff] as a result of

26  issuing any Bond, as determined by [Plaintiff] in its sole discretion." (Pl.'s Ex. 1 at 3.)  It

27  is undisputed that Plaintiff settled claims arising out of the bonds it issued, first in

28  settling the consolidated action, and second in paying the I-5 Rentals claim brought

11

1    against the Tuscan bond and Plaintiff has also incurred damages in the form of

2    certain attorneys' fees and costs.  In resolving these claims, Plaintiff acted within its

3    discretion, and Defendants are obligated to reimburse for these incurred costs.

4         As there is no genuine dispute of material fact and Plaintiff is entitled to

5    judgment as a matter of law, the motion for summary judgment as to claim two is

6    granted.

7         **3.  Declaratory Relief**

8         Plaintiff also seeks summary judgment on its third claim for declaratory relief

9    pursuant to Cal. Code Civ. Proc. § 1060.

10        Federal courts sitting in diversity apply the substantive law of the forum state.

11   *See Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1018 (S.D. Cal. 2000) ("It is well

12   established that federal courts sitting in diversity must apply state substantive law and

13   federal procedural rules.") (citations omitted).  Accordingly, federal courts

14   consistently apply California's Civil Code section 1060 rather than the federal

15   Declaratory Judgment Act when sitting in diversity.  *See Schwartz v. U.S. Bank, Nat'l*

16   *Ass'n*, No. 2:11-cv-08754-MMM-JCG, 2012 WL 10423214, at *15 (C.D. Cal. Aug. 3,

17   2012) (collecting cases).  Thus, the Court applies California law.

18        Plaintiff's declaratory relief claim is based on Defendants' breach of the

19   indemnity agreement, on which the Court has already granted summary judgment.

20   "A declaratory judgment is not a corrective action, and therefore, it should not be

21   used to remedy past wrongs."  *John M. Floyd & Assocs., Inc. v. First Imperial Credit*

22   *Union*, 2017 WL 4810223, at *5 (S.D. Cal. Oct. 25, 2017).  Accordingly, "where there

23   is an accrued cause of action for an actual breach of contract or other wrongful act,

24   declaratory relief may be denied."  *Id.* (citation omitted).  "The purpose of declaratory

25   relief is to enable the parties to shape their conduct so as to avoid a breach."  *Britz*

26   *Fertilizers, Inc. v. Bayer Corp.*, 665 F. Supp. 2d 1142, 1173 (E.D. Cal. 2009) (internal

27   quotation marks omitted).  As Plaintiff's request for declaratory relief is based on

28

1    Defendants' past breach of the GIA, it is not a proper basis for declaratory relief.  The

2    motion for summary judgment is denied as to the third claim.

3          **4.  Liability, Prejudgment Interest, Attorneys' Fees and Costs**

4          Plaintiff has provided undisputed evidence of Defendants' liability for the

5    claims arising out of the GIA, which includes $594,523.31 in principal damages.

6    Plaintiff also requests $244,221.05 in prejudgment interest, postjudgment interest,

7    and certain attorneys' fees and costs.  As explained below, Plaintiff is entitled to

8    recover these sums.

9             **i.  Prejudgment Interest**

10         "Prejudgment interest is a substantive aspect of a plaintiff's claim, rather than a

11   merely procedural mechanism." *Oak Harbor Freight Lines, Inc. v. Sears Roebuck, &*

12   *Co.*, 513 F.3d 949, 961 (9th Cir. 2008) (citation omitted).  Moreover, "[s]tate law

13   generally governs awards of prejudgment interest in diversity actions . . . ." *Id.*  As

14   Plaintiff's claims arise under state law, the Court applies California law.  The

15   applicable Civil Code section provides, "If a contract entered into after January 1,

16   1986, does not stipulate a legal rate of interest, the obligation shall bear interest at a

17   rate of 10 percent per annum after a breach."  Cal. Civ. Code § 3289(b).  Here, the

18   GIA specifies that the legal rate of interest is 10 percent, (Pl.'s Ex. 1 ¶ 20), which is

19   consistent with California law.

20         "Under California Civil Code § 3287, prejudgment interest is recoverable in

21   any action in which damages are certain or capable of being made certain by

22   calculation . . . where there is essentially no dispute between the parties concerning

23   the basis of computation damages if any are recoverable but where their dispute

24   centers on the issue of liability giving rise to damage." *Diamondstar Ent. Holdings,*

25   *LLC v. THH, LLC*, 641 F. Supp. 3d 849, 870 (C.D. Cal. 2022) (cleaned up and citation

26   omitted).  Thus, the test for recovery of prejudgment interest "is whether defendant

27   actually know[s] the amount owed or from reasonably available information could the

28   defendant have computed that amount." *Duale v. Mercedes-Benz USA, LLC*, 148 Cal.

1   App. 4th 718, 729 (2007) (italics and citation omitted).  Here, the principal dispute

2   between the parties is whether Defendants are liable, not whether they would be

3   able to calculate the damages.  Consequently, "prejudgment interest under section

4   3287(a) becomes available as of the day the amount at issue becomes

5   calculable . . . mechanically, on the basis of uncontested and conceded evidence,

6   and it is available as a matter of right, rather than at the discretion of the court." *Diaz*

7   *v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015) (surveying California law in

8   breach of contract appeal) (cleaned up and citation omitted).

9       Plaintiff requests prejudgment interest from the date of breach for each claim

10  up until the date of judgment in the amount of $162.88 per day.  (DSUF ¶¶ 23–24.)

11  The Court makes the following modifications to account for the differing

12  prejudgment time periods between the claims:

13

| Prejudgment Interest | | | | | | |
|---|---|---|---|---|---|---|
| | **Payment** | **Interest Rate** | **(Payment x .10)/365 days** | **Date of Accrual** | **Date of Judgment** | **Total Owed** |
| **Settlement Claim** | $240,000 | 10% | $65.75 per day | Nov. 13, 2023 | Oct. 22, 2025 | $46,619.18 |
| **I-5 Rentals Claim** | $354,523.21 | 10% | $97.13 per day | Dec. 23, 2019 | Oct. 22, 2025 | $206,886.15 |

22

23      Having reviewed the calculations, the Court grants Plaintiff's request for

24  prejudgment interest in full.

25          **ii.  Postjudgment Interest**

26      "Under 28 U.S.C. § 1961, the award of post judgment interest on a district

27  court judgment is mandatory." *Barnard v. Theobald*, 721 F.3d 1069, 1078 (9th Cir.

28  2013).  In diversity actions, "state law determines the rate of prejudgment interest,

1   and postjudgment interest is governed by federal law." *Citicorp Real Est., Inc. v.*

2   *Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998) (citation omitted).  Parties may contract

3   around the rate specified in 28 U.S.C. § 1961(a), but they must do so explicitly.  *See*

4   *id.* at 1108.  Here, per the terms of the GIA, the parties agreed to "an annual rate of

5   10%, or the maximum rate permitted by applicable law if less than 10%."  (Pl.'s Ex. 1

6   ¶ 20.)  This is not a clear unambiguous waiver.  Instead, the Court will apply the lower

7   federal rate required by section 1961(a), which "requires application of a single

8   interest rate for the entire accrual period based on the weekly average one-year

9   Treasury constant maturity for the calendar week preceding the date of judgment."

10  *Lasheen v. Loomis Co.*, No. 2:01-cv-00227-KJM-EFB, 2016 WL 4161119, at *5 (E.D.

11  Cal. Aug. 4, 2016) (citation omitted).  That rate may be located at the Federal Reserve

12  Board's website, which is updated daily.  *Selected Interest Rates (Daily) – H.15*, Board

13  of Governors of the Federal Reserve System (Oct. 20, 2025, 3:10 p.m.),

14  https://www.federalreserve.gov/releases/h15/.

15       In summary, Plaintiff is entitled to postjudgment interest and may seek it by

16  appropriate motion.

17       **iii. Attorneys' Fees**

18       As to Plaintiff's attorneys' fees request of $34,811.95, this sum is spread across

19  three actions.  (DSUF ¶ 25.)  There are minor typos in the separate statement for

20  undisputed fact number 25, but the Court has reviewed Plaintiff's billing exhibits and

21  confirms the correct sums listed below.  (*See generally* Pl.'s Exs. 13–15.).

22

23
24
25
26
27

| Case | Attorneys' Fees | Costs | Total |
|---|---|---|---|
| *Hart* | $16,866.50 | $793.90 | $17,660.40 |
| *Hinojosa* | $672.50 | $11.95 | $684.45 |
| Indemnity Action | $14,837.50 | $1,629.60 | $16,467.10 |
| Total Amount | | | $34,811.45 |

28

While Plaintiff is entitled to the damages incurred related to the *Hart* and *Hinojosa* actions and may recover fees and costs expended thereto as part of the judgment, Plaintiff shall seek attorneys' fees for the instant action by motion pursuant to Federal Rule of Civil Procedure 54(d)(2).  A motion to tax costs may be filed pursuant to Federal Rule of Civil Procedure 54(d)(1).

**ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion for Summary Judgment (ECF ¶ 30) is GRANTED IN PART and DENIED IN PART as follows:

   a. Summary judgment is GRANTED as to Claim One for breach of contract;

   b. Summary judgment is GRANTED as to Claim Two for statutory reimbursement;

   c. Summary judgment is DENIED as to Claim Three for declaratory relief.

2. The Clerk of Court is directed to enter judgment for Plaintiff Philadelphia Indemnity Insurance Company in the amount of $866,373.49:

   a. $594,523.31 in principal damages;

   b. $253,505.30 in prejudgment interest:

      i. $46,619.18 for the settlement of the consolidated action;

      ii. $206,886.15 for the I-5 Rentals payment;

   c. $17,660.40 in attorneys' fees and costs for the *Hart* action; and

   d. $684.45 in attorneys' fees and costs for the *Hinojosa* action.

3. Pursuant to Local Rule 293 and Federal Rule of Civil Procedure 54, Plaintiff shall seek attorneys' fees and costs for the instant action by appropriate motion.  Plaintiff may also seek postjudgment interest pursuant to 28 U.S.C. § 1961.

Dated:  October 22, 2025

_Daniel J. Calabretta_
THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

16